IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LOPEZ ZUNIGA, | ) Case No. 12-2778-SC |
| Plaintiff, | ) ORDER GRANTING MOTION FOR |
| v. | ) <u>SUMMARY JUDGMENT</u> |
| ERIC H. HOLDER, JR., | ) |
| Defendant. | ) |

## I.  **INTRODUCTION**

Plaintiff Jose Lopez Zuniga ("Zuniga") was granted legal permanent resident status as the unmarried son of a legal permanent resident in June 2000.  As part of his application for an adjustment of status, he provided a sworn statement that he was not married.  In fact, Zuniga had been married since 1992.  This fact came to light when Zuniga later applied for naturalization in 2008. Based on this inconsistency, the United States Citizenship and Immigration Service ("USCIS") has repeatedly denied Zuniga's applications for naturalization, reasoning that Zuniga was not lawfully admitted as a permanent resident when he was granted legal permanent resident status.

Zuniga has sued the United States Attorney General ("Defendant") and petitioned the Court for a review of the USCIS's

denial of his naturalization application.  ECF No. 1 ("Pet.").  Defendant now moves for summary judgment.  ECF No. 9 ("MSJ").  The motion is fully briefed.  ECF Nos. 10 ("Opp'n"), 11 ("Reply").  The Court initially denied Defendant's motion because Defendant did not provide any declarations or affidavits authenticating the evidence submitted in support of the motion.  ECF No. 13 ("Sept. 7 Order").  However, the Court indicated that it would reconsider its decision, sua sponte, if Defendant later filed such declarations or affidavits.  Defendant has done so.  ECF No. 14-1 ("Inkeles Aff.").  Having reviewed the briefs and evidence submitted by the parties, the Court VACATES its September 7 Order and GRANTS Defendant's motion.

**II.   BACKGROUND**

In August 1999, Zuniga provided a sworn statement to the former Immigration and Naturalization Service ("INS")[1] in connection with his application for an adjustment of status to a lawful permanent resident.  MSJ Ex. A.  Specifically, Zuniga swore: "I have two children[] and the mother is Maria Chavez.  [I have] never been married to her or [a]nyone else[.]  If I do[,] I will not get my residence (green card)[.]"  On June 23, 2000, INS granted Zuniga legal permanent resident status as an F2-0 unmarried son of a lawful permanent resident of the United States.  MSJ Ex. B.

Eight years later, Zuniga filed an application for naturalization with the USCIS.  MSJ Ex. C.  In that application, Zuniga stated that he had married Maria Chavez on August 1, 1992.

---

[1] The functions of the INS were later transferred to the USCIS.

1  Id. at 4.  In February 2009, the USCIS denied the application
2  pursuant to § 316 of the Immigration and Nationality Act ("INA").
3  MSJ Ex. D.  Section 316 provides, in relevant part: "No person . .
4  . shall be naturalized, unless such applicant, (1) immediately
5  preceding the date of filing his application for naturalization has
6  resided continuously, after being lawfully admitted for permanent
7  residence, within the United States for at least five years . . .
8  ."  8 U.S.C. § 1427(a).  USCIS reasoned that Zuniga was not
9  "lawfully admitted" for permanent residence because he was married
10 prior to June 23, 2000, when he was granted lawful permanent
11 resident status as the unmarried son of a lawful permanent
12 resident.  MSJ Ex. D.
13     Zuniga filed a second and third application for naturalization
14 in 2009 and 2010, respectively.  MSJ Exs. E, I.  Both of these
15 applications were also denied pursuant to INA § 316 on the ground
16 that Zuniga was not lawfully admitted to the United States as a
17 lawful permanent resident.  MSJ Exs. F, M.
18     After his second naturalization application was denied in
19 2009, Zuniga attempted to adjust his status by filing a Form I-485,
20 Application to Register Permanent Residence or Adjust Status.  MSJ
21 Ex. G.  On June 16, 2010, the USCIS denied his application on the
22 ground that Zuniga had already been granted lawful permanent
23 residence on June 23, 2000.  MSJ Ex. H.  USCIS reasoned: "Before a
24 lawful permanent resident can apply for and be granted adjustment
25 of status, he or she would first have to lose lawful permanent
26 resident status . . . ."  MSJ Ex. H.
27     Zuniga petitioned the Court for review of the USCIS's denial
28 of his naturalization application on May 31, 2012.  On July 30,

2012, Defendant moved for summary judgment. While Defendant attached a number of exhibits to his motion, he provided no declarations or affidavits authenticating those exhibits. Because Defendant failed to submit any admissible evidence, the Court denied the motion on September 7, 2012. Sept. 7 Order. However, the Court indicated that it would reconsider its Order if Defendant authenticated his exhibits within fifteen days. Id. On September 12, 2012, Defendant filed an affidavit by John Inkeles, attesting that the exhibits attached to Defendant's motion for summary judgment are true and correct copies of various records from Zuniga's Administrative File, also known as the "A-file." Inkeles Aff. ¶¶ 5-19.

**III. LEGAL STANDARD**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Thus, "Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position

1  will be insufficient; there must be evidence on which the jury
2  could reasonably find for the plaintiff." Id. at 252.

## IV. DISCUSSION

The parties appear to agree on most, if not all, of the material facts at issue. Zuniga does not contest that he has been married since 1992 or that he indicated that he was not married in his sworn statement to the INS in 1999. Thus, the principal dispute here concerns a question of law. Specifically, the parties dispute whether Zuniga was lawfully admitted for permanent residence in 2000 due to the discrepancy on his 1999 application for adjustment of status.

Defendant contends that Zuniga was not lawfully admitted and therefore the denial of Zuniga's naturalization application was proper. Defendant also contends that, although Zuniga unlawfully obtained his permanent resident status, he remains a lawful permanent resident and, therefore, may not adjust his status to that of a lawful permanent resident. Zuniga contends that either: (1) he was lawfully admitted and is therefore eligible for naturalization, or (2) he was not lawfully admitted and, therefore, should be able to seek adjustment to lawful permanent resident status.

The Court's analysis of this dispute begins with INA § 316, which provides that no person may be naturalized unless he or she has first been lawfully admitted for permanent residence:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence,

5

>within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a) (emphasis added). Section 101 of the INA provides that the term "lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Id. § 1101(a)(20).

A number of courts have addressed the term "lawfully admitted for permanent residence" in the context of former INA § 212(c), which provided for the admission of "aliens lawfully admitted for permanent residence" upon returning to their "unrelinquished domicile" in the United States after a temporary trip abroad.[2] See, e.g., Segura v. Holder, 605 F.3d 1063 (9th Cir. 2010). These courts held that "[t]he term 'lawfully' denotes compliance with the substantive legal requirements, not mere procedural regularity." In re Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983); see also

---

[2] Congress repealed INA § 212(c), previously codified at 8 U.S.C. § 1182(c) (1994), when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-597. Section 212(c) provided: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of [§ 212(a)]."

1   Segura, 605 F.3d at 1066 (quoting Longstaff); Savoury v. U.S.
2   Attorney General, 449 F.3d 1307, 1316 (11th Cir. 2006) (same);
3   Monet v. INS, 791 F.2d 752, 753 (9th Cir. 1986) (same).  Thus,
4   "[a]lthough an alien may have been admitted for permanent
5   residence, he has not been lawfully admitted for permanent
6   residence [for the purposes of § 212(c)] if he was precluded from
7   obtaining permanent resident status due to an inability to meet the
8   prerequisites."  Segura, 605 F.3d at 1066 (emphasis in original).

9        For example, in Segura, the plaintiff had pled guilty in an
10  American court in 1989 to possession or purchase of a controlled
11  substance and obtained permanent resident status in 1992.  Id. at
12  1064.  In 2003, he was denied reentry to the United States and was
13  charged with removability for violation of a controlled substance
14  law.  Id. at 1065.  The court denied the plaintiff relief under §
15  212(c) because it concluded that he was "inadmissible" at the time
16  he was granted permanent resident status: to qualify for such
17  status, an alien must establish that he or she has not been
18  convicted of a felony committed in the United States.  Id. at 1066.
19  The Court dismissed the plaintiff's argument that he was eligible
20  for § 212(c) relief because he had not obtained his permanent
21  resident status through fraud, reasoning that eligibility for §
22  212(c) relief turns on an alien's compliance with the substantive
23  elements of the admission requirements.  Id. at 1066-67.

24       Under these cases' broad reading of the term "lawfully
25  admitted for permanent residence," Zuniga is clearly ineligible for
26  naturalization.  Zuniga did not comply with the substantive legal
27  requirements because he misrepresented the fact that he was married
28  when he applied for legal permanent resident status.  Though it is

7

1 unclear from the parties' briefing why Zuniga could not have
2 obtained permanent residence status as a married man, it is clear
3 that, at the time of his application, he did not meet the
4 prerequisites for becoming a permanent resident as an F2-0
5 unmarried son of a lawful permanent resident.
6    Zuniga argues that the cases cited above are inapposite
7 because they involved petitions for relief under § 212(c).  Zuniga
8 reasons that, in the context of INA § 316, "it is possible and
9 permissible" to interpret the term "lawfully admitted for permanent
10 residence" as only requiring "procedural regularity."  Opp'n at 4.
11 However, Zuniga does not explain why the Court should interpret
12 this term differently for the purposes of two different sections of
13 the same statute.  Zuniga points to a 2010 decision by the Board of
14 Immigration Appeals, Matter of Quilantan, 25 I&N Dec. 285 (BIA
15 2010), which concluded that, for the purposes of establishing
16 eligibility for adjustment of status under INA § 245(a), an alien
17 seeking to show that she was admitted to the United States need
18 only prove procedural regularity in her entry.  Opp'n at 4-5.
19 However, that case addressed much different statutory language than
20 the language at issue here.  See Quilantan, 25 I&N at 289 ("Th[e]
21 1960 amendment [which deleted the word "lawfully" from § 245(a)] is
22 significant because it replaced the requirement that . . . an
23 alien's admission be substantively lawful, with a requirement . . .
24 that his or her admission be procedurally regular.").
25    Zuniga also argues that the USCIS denied his applications for
26 naturalization in an arbitrary and capricious manner.  Opp'n at 4.
27 Zuniga specifically points to the fact that his applications for
28 naturalization were denied on the ground that he was not lawfully

8

admitted for permanent residence, while his application for an adjustment of status was denied on the ground that he remained a lawful permanent resident. Id.  Zuniga contends that "[he] is either a lawful permanent resident and can naturalize, or he is not a lawful permanent resident and can seek to obtain a lawful resident status through an adjustment of status application." Id.

However, USCIS's decision on Zuniga's applications for naturalization and adjustment of status are not contradictory. Contrary to Zuniga's argument, the USCIS did not deny his application for naturalization on the ground that he is not a permanent resident.  Rather, it denied his application because he was not lawfully admitted for permanent residence.  Zuniga has offered no evidence which would suggest that the government has ever questioned Zuniga's permanent resident status.  Moreover, as Defendant points out, Zuniga still has a path to naturalization: He can rescind his unlawfully obtained permanent resident status, seek to lawfully adjust his status based on his marriage, and then apply to naturalize after becoming a lawful permanent resident.[3]

///
///
///
///
///
///
///

---

[3] Zuniga also argues that he has not had a hearing or any process to determine whether his permanent residence was unlawfully obtained. Opp'n at 5.  The record reflects otherwise.  See, e.g., MSJ Exs. M, N.

9

**V.   CONCLUSION**

For the foregoing reasons, the Court VACATES its September 7, 2012 Order and GRANTS Defendant Eric H. Holder's Motion for Summary Judgment.  The USCIS's decision on Petitioner Jose Lopez Zuniga's application for naturalization shall remain undisturbed.  The Court shall enter judgment in this matter in a separate order.


IT IS SO ORDERED.


Dated:   September 14, 2012    _____
                                UNITED STATES DISTRICT JUDGE